1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   TULE LAKE COMMITTEE,              No. 2:20-cv-00688 WBS DMC

13              Plaintiff,

14       v.                            MEMORANDUM AND ORDER RE:
                                       MOTIONS TO DISMISS
15   FEDERAL AVIATION ADMINISTRATION,
     CITY OF TULELAKE, CALIFORNIA,
16   CITY COUNCIL OF THE CITY OF
     TULELAKE, BILL G. FOLLIS, JUDY
17   COBB, PHIL FOLLIS, JACK
     SHADWICK, RAMONA ROSIERE, and
18   MODOC NATION fka MODOC TRIBE OF
     OKLAHOMA
19
                Defendants.
20

21                         ----oo0oo----

22
              Plaintiff Tule Lake Committee brought this action
23
     against the Federal Aviation Administration ("FAA"), the City of
24
     Tulelake, California ("the City") and its City Council
25
     (collectively, "the City defendants"), as well as the Modoc
26
     Nation and individual members of the Modoc Nation's Tribal
27
     Council (collectively, "the tribal defendants"), alleging that
28
                                    1

1  defendants' involvement in an agreement between the City and the

2  Modoc Nation to sell land underlying the Tulelake Municipal

3  Airport violated the National Historic Preservation Act, the

4  terms of a federal land patent granting the land to the City, and

5  a number of state statutes.  The FAA, the City defendants, and

6  the tribal defendants have moved to dismiss for lack of subject

7  matter jurisdiction, failure to state a claim, and failure to

8  join a necessary and indispensable party under Federal Rule of

9  Civil Procedure ("FRCP") 19.  (Docket Nos. 7, 12, 13).

10  I.   Relevant Allegations

11       This case arises out of a dispute over property located

12  on the site of a former Japanese internment camp at Tule Lake.

13  (See Compl. ¶¶ 4, 14 (Docket No. 1).)  In 1951, the United States

14  conveyed 359 acres of the internment camp land to the City of

15  Tulelake to use as an airport via a federal land patent.  (Compl.

16  ¶ 19.)  The patent granting the City fee ownership of the

17  property contained covenants requiring that the City develop an

18  airport on the land and that the airport be operated as a "public

19  airport." (Compl. ¶ 103.)  Between 1974 and 2018, the City leased

20  the airport property to Modoc County.  (Compl. ¶¶ 21, 35.)

21       Plaintiff is a California non-profit public benefit

22  corporation whose purpose is to preserve the history and

23  experiences of the inmates of the Tule Lake camp, educate the

24  general public about the false imprisonment of American citizens

25  and immigrants of Japanese ancestry in the 1940s, and to

26  recognize the unique role of the Tule Lake camp in the United

27  States' system of Japanese internment.  (Compl. ¶ 4.)  Plaintiff

28  has previously expressed the view that the airstrip on the

2

1   property at issue should be relocated to preserve historic

2   aspects of the property, including a cemetery that lay near the

3   edge of the airport grant.  (Compl. ¶¶ 20, 43-48.)

4          Sometime before or during 2018, the City defendants

5   decided to sell their fee interest in the airport property to the

6   Modoc Nation.  (Compl. ¶ 50.)  Once plaintiff learned that the

7   City defendants were interested in selling the airport property,

8   it made several written offers to purchase the property for

9   $40,000, and it appeared at an open City Council meeting on July

10  31, 2018 to express its interest.  (Compl. ¶¶ 49-70.)

11         The City defendants voted to sell the airport property

12  to the Modoc Nation for $17,500 at the conclusion of the July 31,

13  2018 City Council meeting, contingent upon the FAA consenting to

14  the transfer of the airport property to the Modoc Nation.

15  (Compl. ¶ 70, Ex. C.)  On August 9, 2018, the City defendants

16  sent the FAA a copy of the parties' purchase and sale agreement

17  ("the Purchase Agreement") for the airport property and requested

18  that the FAA approve the sale.  (See Compl. Ex. D.)  A Manager

19  from FAA's Regional Airport Division Office issued a letter ("the

20  Armstrong Letter") in response, indicating that the office had no

21  objection to the proposed sale.  (See Compl. Ex. F.)

22         Following the City defendants' decision to sell the

23  airport property to the Modoc Nation, plaintiff filed suit

24  seeking to set aside the sale of the airport property.  (See

25  Compl. ¶¶ 191-200.)  The complaint contains the following causes

26  of action: (1) violation of the National Historic Preservation

27  Act ("NHPA"), 54 U.S.C. §§ 306102-3016108, and Administrative

28  Procedure Act ("APA"), 5 U.S.C. §§ 702-706; (2) violation of the

3

1  1951 Federal Land Patent and the APA; (3) violation of the

2  California Surplus Act, Cal. Gov. Code §§ 54220-54222; (4)

3  violation of public policy; (5) violation of the Ralph M. Brown

4  Act, Cal. Gov. Code §§ 54953-54960; and (6) violation of 42

5  U.S.C. §§ 1981, 1983.  (See generally Compl.)

6  II.  Legal Standard

7          Federal Rule of Civil Procedure 12(b)(6) allows for

8  dismissal when the plaintiff's complaint fails to state a claim

9  upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

10  inquiry before the court is whether, accepting the allegations in

11  the complaint as true and drawing all reasonable inferences in

12  the plaintiff's favor, the complaint has stated "a claim to

13  relief that is plausible on its face."  Bell Atl. Corp. v.

14  Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is

15  not akin to a 'probability requirement,' but it asks for more

16  than a sheer possibility that a defendant has acted unlawfully."

17  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare

18  recitals of the elements of a cause of action, supported by mere

19  conclusory statements, do not suffice."  Id.

20  III. Discussion

21          The only federal claims that plaintiff raises in its

22  complaint are against the FAA.[1]  Plaintiff first claims that the

23  FAA violated the NHPA, 54 U.S.C. § 306108, by approving the City

24  defendants' sale of the airport property without first complying

25          [1]    Though the complaint also claims that the City
26  defendants violated 42 U.S.C §§ 1981 and 1983, plaintiff conceded
   in its opposition to the City defendants' motion to dismiss that
27  its complaint had not stated a § 1981 or § 1983 claim  and
   requested that the court dismiss that claim.  (See Pl.'s Opp'n
28  City Def. Mot. Dismiss at 12 (Docket No. 16).)

4

1  with certain procedural requirements under the statute.  (See

2  Compl. ¶¶ 77-92.)  Plaintiff also claims that the FAA violated

3  the terms of the 1951 federal land patent by failing to prevent

4  the sale of the property to the Modoc Nation.  (See id.)

5       A.   Violation of the NHPA

6            Plaintiff's claim under the NHPA seeks judicial review

7  of the FAA's alleged approval of the sale of the airport property

8  under APA section 702.  APA section 702 allows persons "suffering

9  legal wrong because of agency action, or adversely affected or

10  aggrieved by agency action within the meaning of a relevant

11  statute" to seek judicial review.  5 U.S.C. § 702.

12            Because section 702 grants judicial review for legal

13  wrongs caused by "agency action," in order for the court to have

14  subject matter jurisdiction over this claim plaintiff's complaint

15  must allege facts sufficient to support the conclusion that the

16  FAA's approval of the airport transfer was an "agency action".

17  Wild Fish Conservancy v. Jewell, 730 F.3d 791, 800-01 (9th Cir.

18  2013) (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55,

19  61-62 (2004)); see also Fairbanks N. Star Borough v. U.S. Army

20  Corps of Eng'rs, 543 F.3d 586, 591 (9th Cir. 2008) (noting that

21  the presence of a final agency action is "a jurisdictional

22  requirement to obtaining judicial review under the APA").  The

23  APA defines "agency action" as "the whole or part of an agency

24  rule, order, license, sanction, relief, or the equivalent or

25  denial thereof, or failure to act."  5 U.S.C. § 551(13).

26            The complaint must also allege facts sufficient to show

27  that the FAA's action was "final" under the APA.  Id. ("To

28  maintain a cause of action under the APA, a plaintiff must

5

1   challenge 'agency action' that is 'final.'" (quoting Norton, 542

2   U.S. at 61-62)); see also 5 U.S.C. § 704 (further limiting review

3   under the APA to "final agency action for which there is no other

4   adequate remedy in court") (emphasis added).  The Supreme Court

5   has articulated a two-part test to determine if an agency action

6   is "final" under the APA:

7           First, the action must mark the consummation of
        the agency's decisionmaking process--it must not
8       be of a merely tentative or interlocutory nature.
        And second, the action must be one by which
9       rights or obligations have been determined, or
        from which legal consequences will flow.
10

11  Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal quotation

12  marks and citations removed).

13          Here, plaintiff's complaint identifies two potential

14  agency actions taken as part of the FAA's approval: first, that

15  the Armstrong Letter acted as a "permit, license, or approv[al]"

16  for the City defendants to sell the airport property to the Modoc

17  Nation (See Compl. ¶ 85); and second, that the FAA's failure to

18  carry out the NHPA's procedural requirements prior to approving

19  the sale of the airport property constituted a reviewable agency

20  action (See Compl. ¶ 86).  For the following reasons, neither

21  action qualifies as "agency action," much less "final agency

22  action," under the APA.  See Wild Fish Conservancy, 730 F.3d at

23  800-01.

24          1.   The Armstrong Letter

25          The Armstrong Letter is not "agency action" because it

26  is not the type of "circumscribed, discrete agency action[]" that

27  is ordinarily the subject of judicial review.  See Norton, 542

28  U.S. at 62.  "The definition of [agency action] begins with a

1  list of five categories of decisions made or outcomes implemented

2  by an agency--'agency rule, order, license, sanction [or]

3  relief.'"  Id. (quoting 5 U.S.C. § 551(13)).

4          The Armstrong Letter--which plaintiff attaches to the

5  complaint as an exhibit--does not fall under any of those five

6  categories.  (See Compl. Ex. F.)  The Letter outlines the terms

7  of the parties' Purchase Agreement and acknowledges that the

8  operator of the airport is subject to existing obligations under

9  the law to receive federal grant funding from the FAA.  (See id.)

10  It then states that "based on [the] information and the

11  conditions provided [by the parties], the FAA has no objection to

12  the proposed Purchase Agreement of the Airport property from the

13  City to the Tribe."  (Id.)

14          The Armstrong Letter is essentially an advisory opinion

15  informing the parties to the Purchase Agreement of the airport

16  operator's obligations under law and under the terms of the 1951

17  land patent.  It is not "an agency statement of . . . future

18  effect designed to implement, interpret, or prescribe law or

19  policy," 5 U.S.C. § 551(4) (definition of rule), or "a final

20  disposition ... in a matter other than rule making," see id. at §

21  551(6) (order).  Nor is it a "permit ... or other form of

22  permission."  See Id. at § 551(8) (license).

23          While Congress intended the APA's definition of an

24  "agency action" to be "'expansive,' federal courts 'have long

25  recognized that the term [agency action] is not so all-

26  encompassing as to authorize [federal courts] to exercise

27  judicial review over everything done by an administrative

28  agency.'"  Wild Fish Conservancy, 730 F.3d at 800-01 (quoting

1    Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13,

2    19 (D.C. Cir. 2006)).  By its own terms, the Armstrong Letter

3    does not purport to approve, license, or give permission for

4    anything.  (See Compl. Ex. F.)  It is therefore not an "agency

5    action" subject to judicial review within the meaning of 5 U.S.C.

6    § 551(13).  See Wild Fish Conservancy, 730 F.3d at 800-01; see

7    also Bituminous Cas. Corp. v. Walden Res., LLC, 672 F. Supp. 2d

8    835, 845-46 (E.D. Tenn. 2009) (holding that an agency letter

9    describing the consequences of a party's failure to follow

10   federal law was not a final agency action, and that it was

11   "doubtful that [the] letter constitute[d] 'action' at all").

12         Even if the Armstrong Letter were an "agency action"

13   subject to review, the court would still lack subject matter

14   jurisdiction because the Letter's issuance does not meet either

15   of the finality requirements set out in Bennett.  See Bennett,

16   520 U.S. at 177-78.  First, the Letter does not "mark the

17   consummation of the agency's decisionmaking process."  See id.

18   It does not appear to have been issued as the result of any sort

19   of formal decisionmaking process by the FAA; in fact, a Manager

20   from the agency's Regional Airport Division Office issued the

21   Letter just eight days after receiving the City's request.  (See

22   Compl. Exs. D, F.)  The FAA did not hold hearings, solicit

23   additional input, or rely on any other evidence beyond the

24   Purchase Agreement before it issued the Letter.  (See id.)  In

25   fact, the Letter specifically notes that it only "represents the

26   present views of the FAA's Regional Airport Division Office," not

27   the views of the FAA as a whole.  See Soundboard Ass'n v. Fed.

28   Trade Comm'n, 888 F.3d 1261, 1268 (D.C. Cir. 2018), cert. denied

                                    8

1   sub nom. Soundboard Ass'n v. F.T.C., 139 S. Ct. 1544 (2019)

2   (holding that an informal agency letter did not represent the

3   consummation of the agency's decisionmaking process because it

4   only expressed the views of agency staff, not the agency as a

5   whole).

6           Second, the issuance of the Armstrong Letter is not an

7   action "by which rights or obligations have been determined, or

8   from which legal consequences will flow." Bennett, 520 U.S. at

9   177-78. Plaintiff's complaint does not identify--and the court

10  is not aware of--any authority that requires the FAA to approve a

11  sale or transfer of the airport property to the Modoc Nation.

12  Instead, the complaint alleges that the FAA had to decide whether

13  to approve the sale of the airport property because the parties

14  agreed to condition the sale of the property on FAA approval.

15  (See Compl. ¶ 64.)

16          An agency action cannot become final merely because

17  private parties agree to treat it as determinative. The APA

18  requires that rights, obligations, or legal consequences flow

19  from agency action, not the parties' own, self-imposed contracts.

20  See Bennett, 520 U.S. at 177-78 ("[T]he action challenged must be

21  one by which rights or obligations have been determined, or from

22  which legal consequences will flow." (emphasis added) (internal

23  quotation marks omitted)). Because the Purchase Agreement is the

24  only alleged source of legal rights, obligations, or consequences

25  that could flow from the FAA's issuance of the Armstrong Letter,

26  the Letter cannot constitute a "final" agency action. See id.

27          In short, an informal agency letter that (1) merely

28  advises the City defendants and the tribal defendants of

1   independent legal obligations that arise under federal law and

2   the 1951 land patent, (2) does not represent the view of the

3   agency as a whole, (3) does not purport to approve or license the

4   sale of the airport property in any way, and (4) does not give

5   rise to any legal rights, obligations, or consequences outside of

6   a private agreement between the City defendants and the tribal

7   defendants is not reviewable under the APA.  The court therefore

8   lacks subject matter jurisdiction to review the FAA's issuance of

9   the Armstrong Letter under the statute.  Wild Fish Conservancy,

10  730 F.3d at 802.

11          2.   Failure to Act Pursuant to the NHPA

12          The FAA's failure to consider the impact of the sale of

13  the airport property under the NHPA was also not a final agency

14  action.  While a failure to act can constitute an agency action

15  under the APA, see 5 U.S.C. § 551(13), the plaintiff must "assert

16  that an agency failed to take a discrete agency action that it is

17  required to take."  Norton, 542 U.S. at 64 (2004).

18          Here, the complaint alleges that NHPA section 106

19  requires the FAA to consider the impact of its actions on

20  historic property.  (See Compl. ¶ 82.)  Specifically, section 106

21  states that "prior to the approval of the expenditure of any

22  Federal funds on [a Federal] undertaking or prior to the issuance

23  of any license, [the agency] shall take into account the effect

24  of the undertaking on any historic property."  54 U.S.C. § 306108

25  (emphasis added).

26          The FAA's failure to act under NHPA section 106 cannot

27  constitute a final agency action because section 106 only imposes

28  an obligation on the FAA prior to the agency's approval of the

1  expenditure of federal funds or issuance of a license.  <u>See</u> <u>id.</u>

2  As noted above, the FAA did not issue any license or approval of

3  the sale of the airport property in this case, and plaintiff has

4  not identified any source of law authorizing or requiring the FAA

5  to issue such an approval or license.  The complaint therefore

6  does not allege that the FAA failed to take any discrete agency

7  action that it was required to take.  <u>See</u> <u>Norton</u>, 542 U.S. at 64

8  (2004).

9         Accordingly, neither the FAA's issuance of the

10  Armstrong Letter nor its failure to act under the NHPA constitute

11  a "final agency action" by the FAA.  <u>Bennett</u>, 520 U.S. at 177-78.

12  The court therefore does not have subject matter jurisdiction

13  over plaintiff's claim that the FAA violated the NHPA by

14  approving the transfer of the airport property to the Modoc

15  Nation, and the court will dismiss plaintiff's first claim

16  against the FAA.  <u>See</u> <u>Wild Fish Conservancy</u>, 730 F.3d at 802.

17         B.   <u>Violation of the 1951 Federal Land Patent</u>

18         Plaintiff next claims that the FAA violated the terms

19  of the 1951 federal land patent by failing to enforce its

20  provisions.  Plaintiff's complaint claims that the land patent

21  contains a covenant that prohibits the airport property from

22  being conveyed to the Tribal defendants.  (<u>See</u> Compl. ¶¶ 94-105.)

23  As with its first claim, plaintiff seeks judicial review of the

24  FAA's failure to enforce the terms of the 1951 land patent under

25  APA section 702.  (<u>See</u> Compl. ¶108.)

26         For the same reason that the court lacks subject matter

27  jurisdiction over plaintiff's claim that the FAA failed to comply

28  with procedural requirements imposed by the NHPA, the court also

11

1  lacks subject matter jurisdiction over plaintiff's claim that the

2  FAA failed to enforce the terms of the 1951 land patent.  Though

3  failures to act are reviewable the APA, see 5 U.S.C. § 551(13),

4  the plaintiff must "assert that [the] agency failed to take a

5  discrete agency action that it is required to take."  Norton, 542

6  U.S. at 64 (2004).  Here, plaintiff's complaint does not

7  identify--and the court is not aware of--any authority that

8  requires the FAA to enforce the terms of the 1951 land patent.

9  The FAA's failure to enforce the land patent is therefore not an

10 "agency action" within the meaning of the APA.  See id.

11 Accordingly, the court will dismiss plaintiff's second claim for

12 lack of subject matter jurisdiction.  See Wild Fish Conservancy,

13 730 F.3d at 802.

14      C.  Supplemental Jurisdiction

15      Because the court will dismiss plaintiff's only federal

16 claims, the court no longer has federal question jurisdiction.

17 See id.  Federal courts have "supplemental jurisdiction over all

18 other claims that are so related to claims in the action within

19 such original jurisdiction that they form part of the same case

20 or controversy under Article III of the United States

21 Constitution."  28 U.S.C. § 1367(a).  But a district court "may

22 decline to exercise supplemental jurisdiction . . . [if] the

23 district court has dismissed all claims over which it has

24 original jurisdiction."  28 U.S.C. § 1367(c); see also Acri v.

25 Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en

26 banc) (explaining that a district court may decide sua sponte to

27 decline to exercise supplemental jurisdiction).  The Supreme

28 Court has stated that "in the usual case in which all federal-law

12

1  claims are eliminated before trial, the balance of factors to be

2  considered under the pendent jurisdiction doctrine--judicial

3  economy, convenience, fairness, and comity--will point toward

4  declining to exercise jurisdiction over the remaining state-law

5  claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7

6  (1988).

7         Comity weighs in favor of declining to exercise

8  supplemental jurisdiction over plaintiff's state law claims

9  because the state court is competent to hear those claims and may

10 have a better understanding of the relevant state law.  As for

11 judicial economy, this action is still at the motion to dismiss

12 stage, and plaintiff's state law claims have not been the subject

13 of any litigation.  Judicial economy does not weigh in favor of

14 exercising supplemental jurisdiction.  Lastly, convenience and

15 fairness do not weigh in favor of exercising supplemental

16 jurisdiction.  The federal and state fora are equally convenient

17 for the parties.  There is no reason to doubt that the state

18 court will provide an equally fair adjudication of the issues.

19 Accordingly, the court declines to exercise supplemental

20 jurisdiction and will dismiss plaintiff's remaining state law

21 claims.

22         IT IS THEREFORE ORDERED that defendants' motions to

23 dismiss (Docket Nos. 7, 12, 13) be, and the same hereby are,

24 GRANTED.

25         Plaintiff's claims against defendant Federal Aviation

26 Administration are DISMISSED WITH PREJUDICE.  Plaintiff's claim

27 against defendants City of Tulelake and the City Council of

28 Tulelake under 42 U.S.C. §§ 1981, 1983 is also DISMISSED WITH

1   PREJUDICE.   Plaintiff's claims under California law against

2   defendants City of Tulelake, City Council of the City of

3   Tulelake, Bill G. Follis, Judy Cobb, Phil Follis, Jack Shadwick,

4   Ramona Rosiere, and the Modoc Nation are DISMISSED WITHOUT

5   PREJUDICE to refiling in state court.   The Clerk of Court shall

6   enter final judgment in favor of all defendants.

7   Dated:   September 24, 2020

8   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28